# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Mary Elizabeth Pitrello,

Petitioner

v.

William Reubart, *et al.*,

Respondents

Case No.:  2:22-cv-00835-APG-EJY

**Order Granting Motion to Dismiss, Denying Motion for Evidentiary Hearing, Denying Certificate of Appealability, and Closing Case**

[ECF Nos. 40, 56]

In her 28 U.S.C. § 2254 petition for a writ of habeas corpus, Mary Elizabeth Pitrello challenges her conviction pursuant to a plea of guilty but mentally ill to first-degree murder, alleging that her trial counsel was ineffective and that her plea was involuntary, unknowing, and unintelligent. ECF No. 26.  The respondents move to dismiss the petition as untimely, wholly unexhausted/procedurally defaulted, and/or noncognizable. ECF No. 40.  Pitrello opposed the motion to dismiss, then later moved for an evidentiary hearing. ECF Nos. 53, 56.  The petition is untimely and must be dismissed, and I deny the motion for evidentiary hearing.

## I.    Background

In April 2016, Pitrello pleaded guilty but mentally ill to first-degree murder in Eighth Judicial District Court (Clark County) Nevada. Exh. 27.[1]  She was convicted of killing her roommate with a shotgun after he took her car keys to prevent her from driving drunk. *See* Exh. 24.  The victim's girlfriend testified at the preliminary hearing that the victim called her that night and told her that Pitrello was very drunk and he had taken her car keys. Exh. at 10-12.  He said Pitrello had been wrecking the house, that she had a shotgun, and that he was afraid she was

---

[1] Exhibits referenced in this order are found at ECF Nos. 35, 36, 38, 50 and 52.

going to shoot him.  The girlfriend then heard a large boom; she could hear the victim take several gurgling breaths and then it went quiet.  She heard a loud female voice yelling.

The state district court followed the plea recommendation and sentenced Pitrello to 20 years-to-life in prison. Exh. 25.  Judgment of conviction was entered on April 4, 2016. Exh. 27. An amended judgment of conviction was entered days later ordering that Pitrello receive treatment for her mental illness while incarcerated. Exh. 29.  Pitrello did not file a direct appeal. In April 2022, the Supreme Court of Nevada affirmed the denial of her untimely state habeas corpus petition as procedurally barred. Exh. 64.

Pitrello dispatched her federal habeas petition for filing in May 2022. ECF No. 7.  I granted her motion for appointment of counsel. *See* ECF No. 6.  She filed an amended petition through the Federal Public Defender (FPD) setting forth three grounds for relief:

Ground 1: Pitrello's counsel was ineffective in violation of her Fifth, Sixth, and Fourteenth Amendment rights for failing to file a motion to suppress inculpatory statements she made to police.

Ground 2: Counsel was ineffective for failing to investigate possible defenses before having Pitrello plead guilty but mentally ill.

Ground 3: Pitrello's plea was involuntary, unknowing, and unintelligent because of medication she was taking at the time she entered the plea and because of counsel's threats in violation of her Fifth, Sixth, and Fourteenth Amendment rights.

ECF No. 26 at 10-17.

The respondents move to dismiss the petition as untimely and, alternatively, as unexhausted/procedurally barred and/or noncognizable. ECF No. 40.  Pitrello opposed, and the respondents replied. ECF Nos. 53, 68.[2]  Pitrello acknowledges that the petition is untimely, but

---

[2] Pitrello filed a 42-page opposition without seeking leave of the court. Local Rule LSR 3-2(b) and (c).

1  she argues that she is entitled to equitable tolling. Exh. 53.  She also moved for an evidentiary

2  hearing, which the respondents oppose.  ECF Nos. 56, 69, 72.

3                    **II.    Discussion**[3]

4                    **A.  The Petition is Untimely**

5          The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year

6  limitation period on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d).  That

7  limitation period is tolled during the time in which a properly filed application for State

8  postconviction or other collateral review is pending. 28 U.S.C. § 2244(d)(2).  Pitrello agrees that

9  the AEDPA limitation period expired on May 9, 2017, so her May 25, 2022 pro se federal

10  petition is untimely by over five years. ECF No. 53 at 9.  Thus, she needs to show she is entitled

11  to equitable tolling of the limitations period or that she is actually innocent.

12                    **B.  Equitable Tolling**

13                    **1.  Legal Standard**

14          Pitrello argues that she is entitled to equitable tolling of the statute of limitations. *Id*. at 9-

15  28.  To qualify, she must show "'(1) that [s]he has been pursuing [her] rights diligently, and that

16  (2) some extraordinary circumstance stood in [her] way' and prevented timely filing." *Holland v.*

17  *Florida*, 560 U.S. 631, 649 (2009)(quoting prior authority).  However, an "external force"—not

18  mere oversight, miscalculation, or negligence—must have caused the untimeliness. *Velasquez v.*

19  *Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (quotation omitted).  In addition, a causal

20  relationship must exist between the extraordinary circumstance and the late filing. *E.g., Bryant v.*

21  *Ariz. Att'y Gen*., 499 F.3d 1056, 1061 (9th Cir. 2007).  Equitable tolling is "unavailable in most

22

23  _____

[3] I have considered all of the parties' arguments.  Any absence of mention of a specific argument does not
24  signify that I overlooked it.

cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002). Pitrello "must show that [s]he has been reasonably diligent in pursuing [her] rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time for filing his claim in federal court." *Smith v. Davis* 953 F.3d 598-599 (9th Cir. 2020).

A serious mental impairment can constitute an extraordinary circumstance. Pitrello must prove that she "was unable rationally or factually to personally understand the need to timely file" or that her "mental state rendered [her] unable personally to prepare a habeas petition and effectuate its filing." *Bills v. Clark*, 628 F.3d 1092, 1099 (9th Cir. 2010). She must show diligence in pursuing her claims "to the extent [s]he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance." *Id*. at 1099–1100 (citations omitted); *see also Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003) ("[w]here a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitably tolled"). I must consider whether the mental impairment made it impossible for Pitrello to timely file a habeas petition on her own. *Stancle v. Clay*, 692 F.3d 948, 959 (9th Cir. 2012).

### 2. Analysis

Pitrello did not file a direct appeal. She took no action to file anything in state court until just before or as the federal statute of limitation expired. Seven months later, on December 1, 2017, she filed a motion to withdraw counsel and a motion for production of documents. Exhs. 30, 31. She argues that several external impediments prevented her from timely filing her federal petition. First, she points out that, due to her sentence structure, she was in

administrative segregation from April 2016 through January 2017. ECF No. 53 at 17, Pet. Exh. 5. She states in her declaration that she had no physical access to the law library and did not have her legal materials. Pet. Exh. 36 at ¶ 8. She said that her only option was to write an informal inmate request or a "kite" to the law library and that "she recall[s] sending some kites during this time to the law library, but [she] never got an acknowledgment that they were received." *Id*. She said that she was unable to work on her appeal because she was depressed and suffering from post-traumatic stress disorder (PTSD) and felt ashamed and anxious. She said that at that time she felt that she should accept her punishment. Her phone access was limited to a 15-minute call up to twice a week.

Pitrello included with her opposition an FPD investigator's summary of interviews with three other inmates conducted in 2023 and 2024. Pet. Exh. 37. One who was in administrative segregation with Pitrello stated that administrative segregation was actually similar to disciplinary segregation, with limited access to property or other areas within the facility. She also said that Pitrello "ke[pt] to herself" and seemed skeptical of any advice (including legal) offered by other inmates. The fellow inmate said that the administrative assistant for the law library had no specialized legal knowledge and that two inmates had been longstanding law library clerks.

Pitrello also argues that equitable tolling is warranted because of her PTSD and other mental health issues. ECF No. 53 at 22. In her submission in support of a finding of guilty but mentally ill filed before sentencing, she submitted three evaluations/reports. Exh. 26. A psychologist recommended specific treatments during her incarceration: dialectic behavior therapy, psychiatric services and substance abuse treatment. *Id*. at 6-7. These were needed for diagnostic impressions including PTSD, alcohol use disorder, and history of head trauma and sexual abuse. A psychiatrist's evaluation prepared for defense counsel concluded that Pitrello

1    was competent to stand trial, assist in the defense of her case, and assist in negotiating a plea

2    agreement. *Id*. at 11-13.  Pitrello had reported to the psychiatrist that she was taking Wellbutrin

3    and Depakote and had a history of drinking heavily.

4          Pitrello now includes with her opposition to the motion to dismiss a report by clinical

5    psychologist Nicole Anders, who spent two hours with Pitrello in September 2023. Pet. Exh. 38.

6    The report is dated January 8, 2025.  Pitrello reported having experienced all ten Adverse

7    Childhood Experiences (ACE), a term used to describe abuse, neglect, and other potentially

8    traumatic experiences suffered by people under age 18.  Pitrello described experiencing

9    emotional neglect, physical neglect, psychological abuse, physical abuse, sexual abuse,

10   substance abuse within family/household, and witnessing domestic violence against

11   parents/caregivers. *Id*. at 8.  Dr. Anders "predict[ed]" that Pitrello met the PTSD criteria from

12   May 2016 to July 2020. *Id*. at 12.  Dr. Anders reported that, while Pitrello did not have trauma

13   symptoms at the time of the evaluation, Pitrello maintained that she would have exhibited all the

14   trauma-related symptoms with a high degree of severity if the evaluation had taken place several

15   years earlier.  Dr. Anders concluded that PTSD may have meant that Pitrello had experienced

16   difficulty with logical thinking, concentrating, reviewing legal documents, and understanding

17   complex instructions during that time period. *Id*. at 13.

18         Pitrello included a declaration by her aunt. Pet. Exh. 34.  Her aunt stated that she was

19   close with Pitrello and that they remained in close contact throughout her arrest, prosecution, and

20   incarceration at Clark County Detention Center and at Florence McClure Women's Correctional

21   Center.  She stated that she frequently talks to her niece on the phone, exchanges letters, and has

22   visited her in prison several times a year.  The aunt said that beginning in September 2018 she

23   met with attorneys that might represent Pitrello.  She hired an investigator in October 2018, who

24   wrote a report opining that the case lacked forensic evidence and theorizing that the gun may

have been accidentally discharged.  The investigator completed his work around March 2019, and Pitrello's aunt hired an attorney in March 2020 who pursued state postconviction relief.

Pitrello also asserts that attorney abandonment was an extraordinary circumstance beyond her control that prevented a timely filing.  The record reflects that the state court granted Pitrello's motion to withdraw and motion for her case file on January 3, 2018. Exh. 33.  On April 3, 2018, she sent a letter to the Clerk of Court stating that her plea counsel had not yet complied with the order to give her the case file. Pet. Exh. 17.  Apparently after discovering that he had not already sent it, in January 2019, counsel sent the case file to Pitrello. *See* Pet. Exh. 35 at 6. Pitrello retained new counsel who filed a state postconviction petition in August 2020.[4]  Pitrello argues that "[at] the time of the AEDPA deadline—May 9, 2017—[she] did not have her case materials despite her own diligence." ECF No. 53 at 25.  She describes this diligence as contacting counsel for her file, filing the motion to withdraw and for the documents, contacting the court when counsel did not send her the files, and hiring a private investigator to obtain the case file.

The respondents assert that Pitrello has not shown that she is entitled to over five years of equitable tolling. ECF No. 68.  They contend that none of the obstacles she alleges constitutes extraordinary circumstances.  They argue (among other arguments) that administrative segregation with limited law library access is not an extraordinary circumstance and point out that although Pitrello was in administrative segregation from April 2016 to January 2017, her AEDPA limitations period did not expire until May 2017.

Pitrello fails to demonstrate extraordinary circumstances or diligence.  The relevant time period is the one-year period after her judgment of conviction became final.  She must show a

---

[4] Counsel had filed what he styled a supplemental pleading, so he later filed a state postconviction petition to correct that error. *See* Exhs. 36, 41, 42, 43.

1   causal relationship between the extraordinary circumstance and the lateness of her filings.

2   *Bryant*, 499 F.3d at 1061.  The court is not unsympathetic to the challenges of navigating law

3   library access.  But the fact that a petitioner was placed in administrative segregation with

4   limited access to the law library does not, alone, establish an extraordinary circumstance.  *See*

5   *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009).  Pitrello now vaguely asserts that "she

6   recalls" sending kites while in administrative segregation.  She fails to provide any documents or

7   evidence demonstrating that she filed any grievances addressing her alleged limited access to

8   library materials, legal files, legal assistance, and other resources to understand the federal

9   habeas process.  Notably, she completed an application for a replacement social security card in

10  March 2017, and began a job in culinary that same month. Pet. Exh. 5.[5]  After the state court

11  granted Pitrello's motion to withdraw counsel and produce documents in January 2018, she did

12  not receive her file until January 2019 due to unexplained delays by her plea counsel. *See* Exh.

13  34, Pet. Exh. 35 at 2, Pet. Exh. 17.  But Pitrello's own exhibits indicate the earliest request form

14  she sent—regarding issues receiving her "discovery/legal work" mail—was on May 3, 2017, a

15  mere five days before expiration of her AEDPA limitation period. *See* Pet. Exh. 6.  Starting in

16  May 2017, she filed several inmate request forms.  She indicates on one form that she did not

17  contact counsel for her file until about April 2017. Pet. Exh. 9.  Pitrello's trial counsel's letter

18  from May 9, 2017 likewise indicates he only "recently received a letter from [Pitrello] requesting

19  [her] case file." Pet. Exh. 23.

20        Just as her limitation period was expiring, Pitrello's counsel sent her a sample motion to

21  withdraw counsel and to produce the file. Pet. Exh. 7.  It appears that the law library also sent her

22

23  _____
    [5] In fact, one of the fellow inmates interviewed stated that she and Pitrello began working in culinary
    almost immediately after release from administrative segregation in January 2017. Pet. Exh. 37 at 3-4.  In
24  November 2017 (after the limitations period expired) Pitrello was also assigned to a porter position. Pet.
    Exh. 5.

a form motion on May 25, 2017. *See* Pet. Exh. 12. But Pitrello took no action until she filed the

motion to withdraw in November 2017. First, the limitation period had already expired. But her

inaction until about a month before the limitation period ran—and for seven months after

receiving instructions and sample motions—further reflects a lack of diligence. She also had

been transferred out of administrative segregation in January 2017. So even if limited law

library access in administrative segregation was a hindrance, she has not shown that it was

impossible for her to timely file her petition. *Ramirez*, 571 F.3d at 998.

    With respect to equitable tolling based on mental impairment, Pitrello has not shown that

she could not rationally or factually understand the need to timely file a federal petition (or

pursue state postconviction relief) or that her mental state was such that she was unable to

prepare and file a habeas petition. *Bills*, 628 F.3d at 1099. She states in her declaration that her

PTSD caused her shame and extreme anxiety whenever she thought about working on her case,

and that she was emotionally unable to work on her appeal. Pet. Exh. 36. She states that when

she was moved out of administrative segregation in January 2017, she began trying to contact

counsel for her file. She doesn't allege that she was unable to work on her case at that time.

Moreover, her exhibits show that she did not contact counsel for her file until very shortly before

the AEDPA limitation period expired. I conclude that she has not shown that the totality of the

circumstances made it impossible for her to meet the filing deadline.

    Notably—after the limitation period had expired—Pitrello filed a number of pro se

pleadings in state district court during the five-year timeframe in which she requests equitable

tolling.

- In November 2017, Pitrello filed the two pro se pleadings in state court in her
  underlying criminal case. Exhs. 30, 30.

- In December 2017, Pitrello initiated a divorce proceeding and filed pro se pleadings. *See* ECF No. 67-1.

- In April 2018, Pitrello sent a letter to the court clerk regarding her underlying criminal case (stating that counsel had not sent her the file). Pet. Exh. 17.

- In June 2018, Pitrello filled out and submitted a Pardons Board application. *See* Pet. Exh. 19.

- In April 2019, Pitrello initiated a new divorce proceeding and again filed pro se pleadings. *See* Exh. 69.

- In October 2019, Pitrello filed additional pro se pleadings in her second divorce proceeding. *See id*. at 4-5.

- In July 2021, Pitrello filed another pro se pleading in her second divorce proceeding. *See id*. at 6.

Yet Pitrello did not file a federal petition until May 2022, more than five years after the expiration of her AEDPA limitation period. The record belies her assertion that she is entitled to equitable tolling.

### 3. Evidentiary Hearing

Two months after filing an opposition to the motion to dismiss, Pitrello moved for an evidentiary hearing on the questions of equitable tolling and actual innocence. ECF No. 56. A habeas petitioner may be entitled to an evidentiary hearing when she makes "a good-faith allegation that would, if true, entitle [her] to equitable tolling," *Laws*, 351 F.3d at 919 (9th Cir. 2003). Thus, the allegation, if true, must demonstrate some extraordinary circumstance stood in the way despite her diligence." *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

1    First, Pitrello argues that an evidentiary hearing is warranted regarding whether

2  conditions in administrative segregation amounted to a sufficient impediment, including

3  whether the law library process impeded her ability to prepare and timely file a federal

4  petition. ECF No. 56 at 3-8. She points to her fellow inmates' declarations that requests

5  for legal materials from the library had to be transmitted by others and that she had

6  limited access to the phone. But she does not explain what further evidence she would

7  present to show that the administrative segregation conditions made it impossible to

8  prepare and file a petition. And as discussed above, she was released from administrative

9  segregation in January 2017 and her AEDPA limitation period expired in May 2017.

10    She also contends that an evidentiary hearing is warranted regarding whether her

11  counsel abandoned her. The record does not support her assertion that plea counsel

12  refused to give her the case file shortly after her incarceration began. Pitrello claims she

13  began calling and writing counsel after she was released from administrative segregation.

14  Pet. Exh. 36 at 4. She has not presented specific, credible evidence that she sent request

15  forms that went unanswered, nor does she explain what she would present at an

16  evidentiary hearing. She asserts only that phone and legal mail logs would "ostensibly"

17  show her attempts to contact counsel. Her own exhibits show that she did not contact

18  counsel until very shortly before the limitation period ran and that counsel responded

19  promptly. *See* Pet. Exhs. 7, 9. The record demonstrates that when she hired state

20  postconviction counsel in 2020, he did not file a federal petition, and he also filed what

21  he styled as a supplemental state petition, mistakenly believing that a state petition had

22  already been filed. *See* Exhs. 36, 43. But again, the limitation period had expired years

23  before.

24

1    Pitrello next argues that a hearing is warranted on whether mental impairment

2 made it impossible for her to meet the filing deadline. ECF No. 56 at 6-7, ECF No. 72 at

3 7-8.  She argues that at a hearing she could develop the record "to identify other times

4 [her] PTSD impacted her ability to seek information from the law library, to attempt to

5 hire a lawyer, or to personally prepare the petition . . . ." ECF No. 56 at 7.  She fails to

6 explain what additional evidence could be adduced beyond her declaration, the

7 declarations of fellow inmates, and her prison case notes that she has provided to the

8 court.  She states that Dr. Anders could testify.  But she does not explain what testimony

9 Dr. Anders would offer beyond her conclusions in her 2023 evaluation.  Her report is

10 already before the court, and I have already determined that Pitrello has not demonstrated

11 that equitable tolling is warranted.  Pitrello is not entitled to an evidentiary hearing

12 because she has not shown a causal connection between her mental disabilities and her

13 delay in filing a federal habeas petition. *See Nivette v. Yates,* 386 Fed.Appx. 592 (9th Cir.

14 July 2, 2010), 2010 WL 2725578; *Bryant v. Arizona Atty. Gen.*, 499 F.3d 1056, 1061 (9th

15 Cir. 2007); *see also Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005), *reversed*

16 *on other grounds*, 447 F.3d 1165 (9th Cir. 2006).

17    Finally, Pitrello argues that an evidentiary hearing should be held on whether she

18 was diligent. ECF No. 56 at 7-8.  All of her arguments here center on what steps she may

19 have taken beginning in 2019.  This is unavailing.  The limitation period expired in May

20 2017.  Even after counsel—in response to her request—told her to file a motion to

21 withdraw and to produce documents and sent her a sample motion, she did not file such a

22 motion until November 2017.  The motion for evidentiary hearing does not address this

23 time period.  The only mention of this seven-month lapse is in Pitrello's declaration.  She

24 states that "[i]t was not until November 2017 that I finally got the courage to submit" the

1 motion to withdraw. Pet. Exh. 36 at 4. This does not support her contention that she was

2 diligent.

3       Pitrello has not pointed to evidence that would support her request for an

4 evidentiary hearing on equitable tolling. An evidentiary hearing on equitable tolling is

5 unwarranted.

6       **C. Actual Innocence**

7       **1. Legal Standard**

8       Pitrello also argues that actual innocence excuses the late filing and procedural defaults

9 of her petition. ECF No. 53. A claim of actual innocence can serve to overcome the AEDPA

10 limitation period. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). A petitioner must meet the

11 "actual innocence" gateway established in *Schlup v. Delo*, 513 U.S. 298 (1995). *Id.* However,

12 "tenable actual-innocence gateway pleas are rare," with "demanding" standards that are "seldom

13 met." *Id.* These exceptions are rare in part because they must be based on actual, factual

14 innocence, not mere legal insufficiency. *See id.*; *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

15       The miscarriage of justice exception applies "to a severely confined category: cases in

16 which new evidence shows 'it is more likely than not that no reasonable juror would have

17 convicted [the petitioner].'" *McQuiggin*, 569 U.S. at 394-95 (quoting *Schlup*, 513 U.S. at 329).

18 "The gateway should open only when a petition presents 'evidence of innocence so strong that a

19 court cannot have confidence in the outcome of the trial unless the court is also satisfied that the

20 trial was free of non-harmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316).

21 Further, "[u]nexplained delay in presenting new evidence bears on the determination whether the

22 petitioner has made the requisite showing." *Id.* at 399.

23       To demonstrate innocence, Petrillo must show that in light of the new evidence, no juror

24 acting reasonably would have found her guilty beyond a reasonable doubt. *Id.* at 399; *Schlup*,

1   513 U.S. at 329; *see also Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003) ("newly

2   presented" evidence, not just newly discovered evidence, falls within new evidence).  Petrillo

3   must support her "allegations of constitutional error with new reliable evidence—whether it be

4   exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—

5   that was not presented at trial." *Schlup*, 513 U.S. 324.  Because such evidence is unavailable in

6   the vast majority of cases, "claims of actual innocence are rarely successful." *Id*.  "The *Schlup*

7   standard 'is demanding,' and precedents holding that a habeas petitioner satisfied its strictures

8   have typically involved dramatic new evidence of innocence." *Larsen v. Soto*, 742 F.3d 1083,

9   1095–96 (9th Cir. 2013) (internal citations omitted).  The habeas court then "consider[s] all the

10  evidence, old and new, incriminating and exculpatory," admissible at trial or not. *House v .Bell*,

11  547 U.S. 518, 538 (2006).  Additionally, bare allegations unsupported by evidence do not tend to

12  establish actual innocence sufficient to overcome a procedural default. *Thomas v. Goldsmith*, 979

13  F.2d 746, 750 (9th Cir. 1992).  "On this record, the court makes a probabilistic determination

14  about what reasonable, properly instructed jurors would do." *Lampert*, 653 F.3d at 938 (quoting

15  *House*, 547 U.S. at 538 and *Schlup*, 513 U.S. at 329) (internal quotation marks omitted).

16      "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v.*

17  *United States*, 523 U.S. 614, 623 (1998).  Petrillo must show the constitutional error complained

18  of probably resulted in the conviction of an actually innocent person in order to prove a

19  "miscarriage of justice." *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998) (citation

20  omitted).  This is a narrow exception and is reserved for extraordinary cases only. *House v. Bell*,

21  547 U.S. 518, 538 (2006); *Sawyer*, 505 U.S. at 340.  It is not enough that the new evidence

22  shows the existence of reasonable doubt; rather Petrillo bears the burden of proof by a

23  preponderance of the evidence to show not just that the evidence in support of conviction was

24

weak, but that it was so weak that no reasonable juror would have convicted her. *Lorentsen v.*

*Hood*, 223 F.3d 950, 954 (9th Cir. 2000); *see also Schlup*, 513 U.S. at 329.

### 2. Analysis

Pitrello argues that the 2019 report of the investigator she hired shows that she is

actually innocent of first-degree murder and is guilty instead of involuntary

manslaughter.  The investigator inspected the crime scene diagram and the shotgun. Pet.

Exh. 35 at 4-11.  He stated that the police firearms report indicated that Pitrello's shotgun

had a "trigger pull" of 3-4 pounds, and that a typical brand-new Glock pistol generally

has a trigger pull of 6 pounds.  He stated that his tests with the gun led him to believe it

was possible that Pitrello tried to unload the shotgun after firing the first round, but a

malfunction occurred.  He speculated that the following scenario "might have occurred":

Pitrello and her friend had been drinking heavily at the pool and returned to the apartment

to find that the victim had taken Pitrello's keys to prevent her from driving drunk.

Pitrello and the victim got into a fight, he shoved her which "might have caused a head

injury"[6] then she went to her room and retrieved the shotgun.  The victim went to his

room and shut the door.  Pitrello accidentally fired a shot down the hallway which struck

the victim through the closed door.  She panicked and she and her friend fled in the

victim's car with the shotgun in the back seat.  He emphasized that this was speculation.

The respondents argue that Pitrello's claim of innocence because she did not kill the

victim with premeditation and deliberation could only render her, at most, legally incapable of

her crimes, not factually innocent.  On appeal of the denial of her untimely state habeas petition,

the Supreme Court of Nevada rejected Pitrello's actual innocence argument:

---

[6] The investigator states that the possible head injury was "documented by police later that evening." Pet. Exh. 35 at 10.  He points to a police photo that he attached. *Id*. at 19.  The photo apparently is of the back of Pitrello's head and shows no discernible sign of injury.

Next, appellant argues that the failure to consider her petition on the merits will result in a fundamental miscarriage of justice. In particular, she alleges that she is actually innocent of first-degree murder because she acted in self-defense or was intoxicated or was otherwise mentally incapable of the intent required for first-degree murder. A colorable showing of actual innocence may overcome procedural bars under the fundamental miscarriage of justice standard. *Berry*, 131 Nev. at 966, 363 P.3d at 1154. But under this standard, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614,623 (1998); *Mitchell v. State*, 122 Nev. 1269, 1273-74, 149 P.3d 33, 36 (2006); *see also Rozzelle v. Sec'y, Florida Dep't of Corr.*, 672 F.3d 1000, 1015-16 (11th Cir. 2012) (explaining that the actual innocence exception contemplates the "extremely rare" cases where the State convicted an innocent defendant, not "run of the mill" cases where the petitioner argues that he or she is guilty of a lesser offense than that for which he was convicted). Appellant's claims asserted legal innocence or challenged the sufficiency of the evidence against her, not her factual innocence, and she failed to allege sufficient facts to demonstrate that "it is more likely than not that no reasonable juror would have convicted" her in light of all the evidence. *Bousley*, 523 U.S. at 623 (internal quotation marks omitted); *see Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (recognizing that the miscarriage of justice exception applies to actual innocence as opposed to legal innocence). Therefore, we conclude that the district court did not err by denying the petition as procedurally barred without conducting an evidentiary hearing.

*See* Exh. 64 at 4-5.

The court thus found that Pitrello merely asserted legal innocence, not factual innocence and, after review of all the evidence, determined Pitrello failed to demonstrate actual innocence. *See id.* The respondents point out that several circuits have held that the state appellate court's factual findings on actual innocence are entitled to a presumption of correctness unless rebutted by clear and convincing evidence. *See, e.g.,* *Cosey v. Lilley*, 62 F.4th 74, 82-83 (2nd Cir. 2023) (joining Third, Fifth, Eighth, and Tenth Circuit Courts of Appeal in finding that a state court's findings of fact are

presumed correct specifically in the context of *Schlup* actual innocence claims); *see also*

*Lambert v. Blodgett*, 393 F.3d 943, 976-78 (9th Cir. 2004).

Pitrello does not argue that she is actually innocent of killing the victim.

Although she asserts that she is innocent of first-degree murder, a petitioner must show

that she is factually innocent. *See Gandarela v. Johnson*, 286 F.3d 1080, 1085 (9th Cir.

2002).  Pitrello's contention that she lacked the mental state for first-degree murder

asserts only legal innocence and does not establish actual innocence. *See, e.g., Burleson*

*v. California Dept. of Corrections and Rehabilitation*, 2009 WL 2941516, at *4 (N.D.

Cal. Sept. 10, 2009) (concession of guilt of lesser-included offense insufficient for claim

of actual innocence); *Pierce v. Trimble*, 2013 WL 5708668, at *1-3 (E.D. Cal. Oct. 15,

2013) (actual innocence claim unavailable where petitioner asserted guilt for a lesser-

included offense); *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000); *Rozelle v.*

*Secretary, Florida Department of Corrections*, 672 F.3d 1000, 1015 (11th Cir. 2012) (the

actual innocence "gateway" to an otherwise procedurally defaulted or time-barred

petition for habeas relief does not extend to petitioners who did the killing and whose

alleged actual innocence of a non-capital homicide conviction is premised on being guilty

of only a lesser degree of homicide). *But see Dixon v. Yates*, 2014 WL 66523, at *17

(E.D. Cal. Jan. 8, 2014), report and recommendation adopted, 2014 WL 2612085 (E.D.

Cal. June 11, 2014) (finding that where the petitioner alleged she was innocent of implied

malice murder due to the lack of mental state, this did not bar an evidentiary hearing on

innocence under *Schlup*).

### 3.  Evidentiary Hearing

Pitrello has not presented "sufficient evidence, if credible, to support a finding

that [s]he is actually innocent of first-degree murder." *Jaramillo v. Stewart*, 340 F.3d 877,

1 | 883 (9th Cir. 2003). Her proffered evidence does not contain new, compelling

2 | information. She presents her investigator's report that merely speculates that she may

3 | have accidently pulled the trigger. *See Lee v. Lampert*, 653 F.3d 929 at 943-944 (9th Cir.

4 | 2011) (speculative evidence is insufficient to show that it is more likely than not that no

5 | reasonable juror would have convicted in light of the new evidence). The investigator

6 | opines that Pitrello may have tried unsuccessfully to unload the shotgun after firing the

7 | round; this is not relevant to whether she committed premeditated, deliberate murder.

8 | This is not reliable, exculpatory, scientific evidence. The first time in all of her state and

9 | federal litigation that Pitrello even presents the argument that the shooting was an

10 | accident is in her opposition to the respondents' motion to dismiss this petition, though

11 | she does not address this delay.[7] *See Schlup*, 513 U.S. at 316. Pitrello had argued to the

12 | Nevada Court of Appeals that she lacked the requisite mental state for first-degree

13 | murder, which again is not factual innocence. In her motion for evidentiary hearing, she

14 | does not explain what evidence she would present at a hearing. The *Schlup* standard is

15 | stringent; Pitrello simply has not presented reliable evidence that shows it is more likely

16 | than not that no reasonable juror would have convicted her. This is insufficient to

17 | establish actual innocence.

18 |       For the reasons discussed above, I deny the petitioner's motion for evidentiary

19 | hearing and I grant the respondents' motion to dismiss the petition as untimely.

20 | **III. Certificate of Appealability**

21 |       This is a final order adverse to Pitrello. Rule 11 of the Rules Governing Section 2254

22 | Cases requires me to issue or deny a certificate of appealability (COA). Accordingly, I have *sua*

23 |

24 | [7] Pitrello's investigator completed his report in 2019, and she filed her state postconviction petition in 2021.

*sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*. None of my rulings meets the *Slack* standard so I decline to issue a certificate of appealability for my dismissal of Pitrello's petition.

I THEREFORE ORDER that the respondents' motion to dismiss **[ECF No. 40] is GRANTED**.  The petition is **DISMISSED** as untimely.

I FURTHER ORDER that the petitioner's motion for evidentiary hearing **[ECF No. 56] is DENIED**.

I FURTHER ORDER that a certificate of appealability will not issue.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED this 17th day of September, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

19